**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elijah McClurg, et al., | ) |
|           Plaintiffs, | ) |
| vs. | ) |
| Maricopa County, et al., | ) |
|           Defendants. | ) |

CIV-09-1684-PHX-MHB

**ORDER**

Pending before the Court are Defendant Maricopa County's Motion for Summary Judgment (Doc. 145) and Defendant Sheriff Joseph Arpaio's ("Arpaio") Motion for Summary Judgment (Doc. 147).  After considering the arguments raised by the parties in their briefing, the Court now issues the following ruling.

This case arises out of the confinement and, subsequent, death of David Wayne McClurg.  Initially, Plaintiff Elijah McClurg, the son of the decedent, filed a complaint on behalf of himself and his minor brother, against Defendants Maricopa County, Maricopa County Correctional Health Services ("MCCHS"), Arpaio, and the Maricopa County Sheriff's Office ("MCSO").  Plaintiff also named several "John Does" as unidentified, individual medical staff and detention officers.  Plaintiff alleged state law claims predicated on Arizona's wrongful death statute, as well as, claims pursuant to 42 U.S.C. § 1983.

The matter was removed to this Court on August 14, 2009.  On November 9, 2009, and on April 20, 2010, the Court dismissed MCCHS and the MCSO as non-jural entities incapable of being sued – and the bulk of the claims set forth in Plaintiff's complaint.  The

1  Court, however, allowed Plaintiff the opportunity to substitute individual names for the

2  unnamed Defendants if, through discovery or otherwise, said Defendants are identified.

3      On October 12, 2010, Plaintiff, on behalf of himself, and as personal representative

4  of the Estate of David Wayne McClurg, and Cindy McClurg, the parent guardian of L.

5  McClurg, a minor, filed their First Amended Complaint.  Plaintiffs named the same four

6  Defendants set forth in the original complaint (including the Defendants this Court has

7  previously dismissed) and added individual Defendants Malinchalk, Patterson, Hernandez,

8  Hargrove, Barker, and Lamarre.  The First Amended Complaint contained five counts, which

9  were substantially the same as the five counts set forth in the original complaint (most of

10  which this Court has previously dismissed).  Count One (Negligence) and Count Two (Gross

11  Negligence) were predicated upon Arizona's wrongful death statute and were asserted

12  against all Defendants.  Count Three alleged a claim pursuant to 42 U.S.C. § 1983 for

13  unconstitutional policies, customs, and failure to train against Maricopa County, MCCHS,

14  Arpaio, and the MCSO.  Count Four alleged a claim pursuant to 42 U.S.C. § 1983 for

15  deliberate indifference to medical needs against all county employee Defendants.  And,

16  Count Five alleged a claim pursuant to 42 U.S.C. § 1983 for loss of consortium against all

17  Defendants.  In lieu of filing answers to the Amended Complaint, Defendants filed Motions

18  to Dismiss.

19      On September 23, 2011, the Court granted in part and denied in part Defendants'

20  Motions to Dismiss.  The Court found that Plaintiffs' claims based on violation of the

21  Privileges and Immunities Clause of the Fourteenth Amendment; Plaintiffs' claims based on

22  cruel and unusual punishment; Plaintiffs' claims based on equal protection; Plaintiffs' claims

23  for vicarious liability/respondeat superior; Plaintiff Elijah McClurg's state law claims against

24  Maricopa County; and non-jural entities MCCHS and the MCSO, were all dismissed from

25  this action based on the Court's previous ruling.  In addition, for the reasons set forth in the

26  Court's prior ruling, the Court dismissed Plaintiffs' state law claims against the remaining

27  Defendants.   Further, the Court determined that Defendants Malinchalk, Patterson,

28                                         - 2 -

1   Hernandez, Hargrove, Barker, and Lamarre were dismissed from this action in its entirety.
2   The Court, however, concluded that Plaintiffs' claims alleged pursuant to 42 U.S.C. § 1983
3   against Maricopa County and Arpaio regarding the conditions of confinement and medical
4   care, as well as, Plaintiffs' related claims for loss of familial association and the Estate's
5   claims for pain and suffering remain.

6        As relevant to the instant Motions for Summary Judgment, within the Court's Order
7   on Defendants' Motions to Dismiss, the Court also extended the date for completion of
8   discovery to December 1, 2011, and for submission of dispositive motions to January 2,
9   2012.  Thereafter, Defendants filed their Answers to Plaintiffs' First Amended Complaint
10  and Maricopa County requested an extension of time to disclose expert witnesses.  (Docs.
11  117, 120, 126.)  According to the pleadings, prior to filing the request for extension of time,
12  Maricopa County's counsel consulted with Plaintiffs' counsel who indicated that he did not
13  feel experts were needed and that he would not agree to an extension of the time.  (Docs. 126,
14  127.)  Specifically, in their response to Maricopa County's request for extension, Plaintiffs
15  state, "[t]his is a case where liability does not require expert testimony; the evidence is
16  straightforward and easily considered by lay persons."  (Doc. 127.)

17       The Court subsequently extended the deadline to submit expert disclosures to
18  December 1, 2011, and noted that "[a]lthough the discovery deadline is December 1, 2011,
19  if necessary, the Court will extend the deadline to complete expert depositions to December
20  21, 2011." (Doc. 128.)  On November 30, 2011, Maricopa County filed a "Notice of Service
21  of Defendant Maricopa County's Sixth Supplemental Disclosure Statement Re: Rule
22  26(a)(2)(B) Disclosure Statement on Expert Witnesses and Expert Disclosures." (Doc. 133.)

23       Maricopa County filed its Motion for Summary Judgment and Separate Statement of
24  Facts on January 10, 2012.  (Docs. 145, 146.)  Arpaio filed its Motion for Summary
25  Judgment and Separate Statement of Facts on January 12, 2012. (Docs. 147, 148.) Plaintiffs
26  filed their Response to Defendants Motions for Summary Judgment, Request for Rule 56(d)
27  Relief, Separate Statement of Facts, and Objections to Maricopa County's Separate
28

1  Statement of Facts on February 23, 2012.[1]  (Docs. 155, 156, 157.)  Arpaio and Maricopa
2  County filed their Replies in Support of Motions for Summary Judgment March 12, 2012.
3  (Docs. 158, 161.)

4      A review of Plaintiffs' pleadings reveals that Plaintiffs have failed to cite to specific
5  portions of the record to support the bulk of their allegations set forth in both their Separate
6  Statement of Facts and Objections.  Rather, Plaintiffs make general citations to groups of
7  records (e.g., "Yavapai Medical Records," "Maricopa County Records," "Maricopa County
8  Medical Records," "Yavapai County records"), requiring the Court to sift through documents
9  to find evidentiary support for Plaintiffs' positions.  Additionally, the Court has found at least
10  one instance in which Plaintiffs reference documents that are not in the record, and multiple
11  instances wherein Plaintiffs fail to provide *any* support in the record and, instead, counsel
12  paraphrases what he believes the record states and interjects argument on the issue.  Facts
13  and exhibits which are immaterial to controverting Defendants' Motions for Summary
14  Judgment will not be considered.  Moreover, unsupported conclusory statements, as well as,
15  attachments without any explanation as to whether or not they contain evidence showing that
16  there is a genuine issue for trial will not be considered.  "A party may not prevail in opposing
17  a motion for summary judgment by simply overwhelming the district court with a miscellany
18  of unorganized documentation."  Zoslaw v. MCA Distributing Corp., 693 F.2d 870, 883 (9th
19  Cir. 1982).

20      The Court also notes that Plaintiffs have failed to comply with Local Rule 56.1(e).
21  Local Rule of Civil Procedure 56.1(e) states that "[m]emoranda of law filed in support or in
22  opposition to a motion for summary judgment ... must include citations to the specific
23  paragraph in the statement of facts that supports assertions made in the memoranda ... ."

24

25      [1]  Plaintiffs' request for oral argument will be denied because the parties have fully
26  briefed the issues and oral argument will not aid in the Court's decision.  See Partridge v.
   Reich, 141 F.3d 920, 926 (9th Cir. 1998); Lake at Las Vegas Investors Group, Inc. v. Pacific
27  Malibu Development Corp., 933 F.2d 724, 729 (9th Cir. 1991).

28

1    Plaintiffs have not provided *any* citations in their memorandum to specific paragraphs in their

2    statement of facts.  This Court has no responsibility on summary judgment to "scour the

3    record in search of a genuine issue of triable fact," Keenan v. Allan, 91 F.3d 1275, 1279 (9th

4    Cir. 1996), but rather "may limit its review to the documents submitted for the purposes of

5    summary judgment and those parts of the record specifically referenced therein."  Carmen

6    v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).  The Court may

7    grant "summary judgment where there [is] a violation of 'a pertinent local rule expressly

8    indicat[ing] that the [nonmoving party] had an affirmative burden to list genuine issues with

9    appropriate record citations in order to withstand the motion for summary judgment."

10   Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2001) (quoting Nilsson,

11   Robbins, Dalgarn, Berliner, Carson & Wurst v. La. Hydrolec, 854 F.2d 1538, 1545 (9th Cir.

12   1988)).

13          Lastly, Plaintiffs attempt to support some of their factual allegations with the affidavit

14   of private investigator Steven Bakos.  (Doc. 156-3.)  It appears that Mr. Bakos was asked to

15   prepare a "chronology of facts" based upon his experience as a law enforcement officer and

16   investigator.  (Id. at ¶3.)  Mr. Bakos has not been disclosed as an expert, and the record does

17   not demonstrate that he is a qualified expert, medical or otherwise.  At times, however, Mr.

18   Bakos' chronology speculates regarding Mr. McClurg's medical treatment and/or condition,

19   yet he fails to provide any factual or medical basis for his assertions.

20                                    **BACKGROUND**[2]

21          The record indicates that David Wayne McClurg was transferred from the Yavapai

22   County jail to the Maricopa County jail on October 23, 2007.  When he was initially booked

23   into the Maricopa County jail, Mr. McClurg was first seen by the medical staff and received

24   —————————————

25          [2]   The following facts are derived from Plaintiffs' First Amended Complaint;
26   documents in this Court's record; and the exhibits and attachments supplied with Maricopa
     County's Separate Statement of Facts, Arpaio's Separate Statement of Facts, and Plaintiff's
27   Separate Statement of Facts and Objections (where discernible and relevant).

28                                         - 5 -

1    an intake medical assessment wherein he was asked a number of questions about his medical

2    history. In the assessment, Mr. McClurg did not state that he was diabetic; he did not state

3    that he required a special diet or that he had any special needs; he never indicated that he

4    suffered from any leg pain, numbness or weakness; he denied a history of hospitalization;

5    and denied having vision problems. He did indicate that he had high blood pressure.

6         Soon after he was booked, Mr. McClurg fell on two separate occasions – once on

7    October 29, 2007, and then again on November 26, 2007. According to the record, he was

8    seen by medical personnel on each occasion and received a physical examination after the

9    October 29, 2007 fall.

10        Mr. McClurg was seen again by medical on December 6, 2007, for gradually

11   increasing edema (swelling) in his foot. Upon examination it was noted that there was a

12   pulse and sensation present in the foot and he was prescribed Lasix (a diuretic) and KCl

13   (potassium chloride) and treated for the edema. He had daily care for the edema for a period

14   of seven days. On December 10, 2007, Mr. McClurg, who was assigned to a cell by himself,

15   fell off the top bunk, suffering a head laceration and cut lip.[3] His wounds were treated and

16   he was transported to Maricopa Medical Center ("MMC") for evaluation. Mr. McClurg was

17   apparently treated at MMC and returned to jail.

18        On December 11, 2007, Mr. McClurg returned to medical as he was bleeding from

19   his scalp and had a swollen foot. He was monitored by jail medical staff and was then sent

20   back to MMC for further evaluation and treatment, and was ultimately admitted. He

21   remained in MMC until February 19, 2008, when he was admitted into the infirmary at

22   Maricopa County jail. Mr. McClurg was released from custody on February 22, 2008.

23

24

25

─────────────

26       [3] Mr. McClurg explained that he was sleeping on the top bunk and fell off when he
     had a dream. It is unclear why he was on the top bunk as the record indicates that he was in
27   a cell by himself and had the option of sleeping on the bottom bunk.

28

1    On September 24, 2008, seven months after being released from custody, Mr.

2 McClurg died.  According to the death certificate, the immediate cause of death was

3 myocardial infarction (heart attack) due to atherosclerosis (blocked arteries).

4                                      **DISCUSSION**

5 **I.    Plaintiffs' Request for Rule 56(d) Relief**

6    In their Response to Defendants' Motion for Summary Judgment, Plaintiffs request

7 that the proceedings be delayed pursuant to Rule 56(d) of the Federal Rules of Civil

8 Procedure, so that Plaintiffs have an opportunity to provide "affidavits of and obtain addition

9 information about [Mr.] McClure's treating physicians, to dispute the claims made by

10 Defendants' experts."[4]

11    Federal Rule of Civil Procedure 56(d) allows the Court to defer consideration of a

12 summary judgment motion where the non-movant shows that "it cannot present facts

13 essential to justify its opposition" and therefore needs to conduct additional discovery.  "But

14 this rule requires discovery only 'where the non-moving party has not had the opportunity

15 to discover information that is essential to its opposition.'"  Roberts v. McAffee, Inc., 660

16 F.3d 1156, 1169 (9th Cir. 2011) (quoting Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 846

17 (9th Cir. 2001)).  A district court that denies a Rule 56(d) motion abuses its discretion "only

18 if the movant diligently pursued its previous discovery opportunities, and if the movant can

19 show how allowing additional discovery would have precluded summary judgment."

20

21

_____

22    [4] Defendants have presented evidence from two experts, Mark Buchanan, M.D. and
Vincent L. Rowe, M.D., to establish that Mr. McClurg's medical problems and death were

23 directly caused by severe arterial and vascular disease he had developed over a period of

24 many years – prior to his incarceration at the Maricopa County jail .  (Doc. 146, Exhs. 2, 4.)
According to the experts, Mr. McClurg's disease was exacerbated by his long-standing

25 "heavy" smoking habit, which ultimately, caused Mr. McClurg to require hospitalization, to

26 undergo amputations of his digits and lower extremity, and to have a heart attack seven
months after being released from custody.

27

28

1   Panatronic USA v. AT&T Corp., 287 F.3d 840, 846 (9th Cir. 2002) (internal quotation omitted).

2          Having reviewed the record, the Court finds that Plaintiffs have not shown that they

3   diligently pursued their previous discovery opportunities – including obtaining statements

4   from treating physicians and retaining the appropriate experts.  Not only did Plaintiffs fail

5   to pursue these avenues of discovery, they also failed to depose Defendants' experts or any

6   of the personnel involved in Mr. McClurg's care.

7          When the Court submitted its ruling on the second set of Motions to Dismiss, it also

8   extended the deadline for discovery to December 1, 2011.  Thereafter, Maricopa County

9   requested an extension of time to disclose expert witnesses.  Plaintiffs objected, indicating

10  that they did not feel experts were needed.  Counsel stated, "[t]his is a case where liability

11  does not require expert testimony; the evidence is straightforward and easily considered by

12  lay persons."  The Court subsequently extended the deadline to submit expert disclosures to

13  December 1, 2011, and noted that "[a]lthough the discovery deadline is December 1, 2011,

14  if necessary, the Court will extend the deadline to complete expert depositions to December

15  21, 2011."  On November 30, 2011, Maricopa County filed its notice of service of expert

16  disclosure.  Plaintiffs' never requested to depose any of the Defendants' experts or submitted

17  their own experts in response thereto – despite knowing that Defendants intended to pursue

18  expert opinions in this case.

19         Moreover, Plaintiffs' have failed to identify specific facts essential to their opposition.

20  In his affidavit, counsel simply claims that "it is incumbent upon Plaintiffs, if necessary to

21  controvert the conclusory statements, to contact multiple physicians to provide additional

22  evidentiary support" regarding underlying disease processes, treatment, and cause of death.

23  Counsel also states that Maricopa County's experts are not qualified; that their proposed

24  testimony is based upon incomplete information; and that "[n]owhere have Defendants, by

25  their Motions or any supporting documentation, controverted the essential disease process

26  of [Mr.] McClurg, and they have wholly ignored multiple medical records contained in the

27  file."

28
                                        - 8 -

1    Thus, based on the foregoing, Plaintiffs' request for Rule 56(d) relief will be denied.

2    Plaintiffs have failed to diligently pursue discovery and identify specific facts that are

3    essential in opposing summary judgment.

4    **II.    Defendants' Motions for Summary Judgment**

5         **A.    Legal Standards**

6              **1.    Summary Judgment**

7         A court must grant summary judgment if the pleadings and supporting documents,

8    viewed in the light most favorable to the non-moving party show that there is no genuine

9    issue as to any material fact and that the movant is entitled to judgment as a matter of law.

10   Fed.R.Civ.P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   Under

11   summary judgment practice, the moving party bears the initial responsibility of presenting

12   the basis for its motion and identifying those portions of the record, together with affidavits,

13   which it believes demonstrate the absence of a genuine issue of material fact.  See Celotex

14   Corp., 477 U.S. at 323.  If the moving party meets its initial responsibility the burden then

15   shifts to the opposing party who must demonstrate that the fact in contention is material, i.e.,

16   a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty

17   Lobby, Inc., 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is

18   such that a reasonable jury could return a verdict for the nonmoving party.  See id. at 250;

19   Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).  The opposing

20   party need not establish a material issue of fact conclusively in its favor; it is sufficient that

21   "the claimed factual dispute be shown to require a jury or judge to resolve the parties'

22   differing versions of the truth at trial."  First Nat'l Bank of Arizona v. Cities Serv. Co., 391

23   U.S. 253, 288-89 (1968).

24        When considering a summary judgment motion, the court examines the pleadings,

25   depositions, answers to interrogatories, and admissions on file, together with the affidavits,

26   if any.  See Fed.R.Civ.P. 56 (c).  At summary judgment, the judge's function is not to weigh

27   the evidence and determine the truth but to determine whether there is a genuine issue for

28

1  trial.  See Anderson, 477 U.S. at 249.  The evidence of the non-movant is "to be believed,

2  and all justifiable inferences are to be drawn in his favor."  Id. at 255.  But if the evidence

3  of the non-moving party is merely colorable or is not significantly probative, summary

4  judgment may be granted.  See id. at 249-50.

5              **2.    Constitutional Claims**

6              To prevail on any § 1983 claim, a plaintiff must demonstrate that he suffered a

7  specific injury as a result of specific conduct of a defendant and show an affirmative link

8  between the injury and the conduct of that defendant.  See Rizzo v. Goode, 423 U.S. 362,

9  371-72, 377 (1976); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  There is no

10 *respondeat superior* liability under § 1983, and, therefore, a defendant's position as the

11 supervisor of persons who allegedly violated a plaintiff's constitutional rights does not

12 impose liability.  See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 691-92

13 (1978); Taylor, 880 F.2d at 1045.  To prevail on a claim against a supervisory official, the

14 civil rights complainant must demonstrate that the official personally participated in the

15 constitutional deprivation or that the supervisory official was aware of widespread abuses

16 and, with deliberate indifference to the inmate's constitutional rights, failed to take action to

17 prevent further misconduct.  See Ortez v. Washington County, Or., 88 F.3d 804, 809 (9th Cir.

18 1996); Taylor, 880 F.2d at 1045; King v. Atiyeh, 814 F.2d 565, 568 (9th Cir. 1987); see also

19 Monell, 436 U.S. at 691-92.

20             Liability may be imposed on the County and Arpaio, in his official capacity, if a

21 plaintiff establishes that (1) he was deprived of a constitutional right and (2) the defendant

22 had a policy, practice, or custom that (3) amounted to deliberate indifference to the

23 constitutional right and (4) was the "moving force" behind the constitutional violation.[5]  See

24 Mabe v. San Bernardino County, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (quoting Van Ort

25 _____

26     [5] Because claims for damages against County officials in their official capacities are
   effectively claims against the County itself, the claims against Arpaio in his official capacity
27 are duplicative.  See Brandon v. Holt, 469 U.S. 464, 471-72 (1985).

28                            - 10 -

v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996)).  The Ninth Circuit recently reiterated that three ways exist to meet the policy, practice, or custom requirement for municipal liability under § 1983:

> (1) the plaintiff may prove that a public entity employee committed the alleged constitutional violation pursuant to a formal policy or a longstanding practice or custom, which constitutes the standard operating procedure of the local government entity; (2) the plaintiff may establish that the individual who committed the constitutional tort was an official with "final policy-making authority" and that the challenged action itself thus constituted an act of official government policy; or (3) the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action.

Avalos v. Baca, 596 F.3d 583, 587-88 (9th Cir. 2010) (quoting Avalos v. Baca, 517 F.Supp.2d 1156, 1162 (C.D. Cal. 2007)).  An unconstitutional policy need not be formal or written to create municipal liability under § 1983.  The policy must, though, be "permanent and well settled as to constitute a custom or usage with the force of law."  Id. (quoting Avalos, 517 F.Supp.2d at 1162).  In addition, the failure to train may only serve as the basis for liability if it amounts to deliberate indifference to the rights of those with whom employees have contact.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989).  The policymaker must have made a "deliberate" or "conscious" choice from among various alternatives, and it must be shown that the training is both inadequate and representative of established policy.  See id. at 389-90.

### 3.    Medical Claim

Although a pretrial detainee's claim for unconstitutional conditions of confinement arises from the Due Process Clause, the Eighth Amendment provides a minimum standard of care for determining a plaintiff's rights when confined.  See Anderson v. County of Kern, 45 F.3d 1310, 1312-1313, as amended, 75 F.3d 448 (9th Cir. 1995).  To prevail on a claim under the Eighth Amendment for prison medical care, a prisoner must demonstrate "deliberate indifference to serious medical needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in

1  further significant injury or the unnecessary and wanton infliction of pain and (2) the

2  defendant's response was deliberately indifferent.   See id.   To act with deliberate

3  indifference, a prison official must both know of and disregard an excessive risk to inmate

4  health; the official must both be aware of facts from which the inference could be drawn that

5  a substantial risk of serious harm exists, and he must also draw the inference.   See Farmer

6  v. Brennan, 511 U.S. 825, 837 (1994).   Deliberate indifference in the medical context may

7  be shown by a purposeful act or failure to respond to a prisoner's pain or possible medical

8  need and harm caused by the indifference.   See Jett, 439 F.3d at 1096.

9           But mere claims of "indifference," "negligence," or "medical malpractice" do not

10 support a claim under § 1983.   See Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th

11 Cir. 1980).   Inadequate treatment due to malpractice or even gross negligence does not

12 constitute an Eighth Amendment violation.   See Wood v. Housewright, 900 F.2d 1332, 1334

13 (9th Cir. 1990).   Medical malpractice does not become a constitutional violation merely

14 because the victim is a prisoner.   Moreover, differences in judgment between an inmate and

15 prison medical personnel regarding an appropriate medical diagnosis or treatment are not

16 enough to establish a deliberate indifference claim.   See Jackson v. McIntosh, 90 F.3d 330,

17 332 (9th Cir. 1996).

18           **B.   Analysis**

19           In their Motions for Summary Judgment, Defendants contend that Plaintiffs' claim

20 of deliberate indifference, including the derivative claims of loss of familial association and

21 pain and suffering, should be dismissed as Plaintiffs have failed to demonstrate any personal

22 involvement by Arpaio or identify any unconstitutional policy, practice, or custom giving rise

23 to an alleged constitutional violation.   In response, Plaintiffs reiterate that the

24 unconstitutional policies, procedures, and customs of Maricopa County and Arpaio caused

25 Mr. McClurg's death.   Relying primarily on the Findings of Fact and Conclusions of Law

26 set forth in Graves v. Arpaio, 2008 WL 4699770 (D. Ariz. Oct. 22, 2008) to support their

27

28                                         - 12 -

1    claims, Plaintiffs assert that there have been many cases that "evidence patent inadequacies"
2    in Maricopa County jails.

3         As stated, to prevail on any § 1983 claim, Plaintiffs must demonstrate that Mr.
4    McClurg suffered a specific injury as a result of specific conduct of Defendants and show
5    an affirmative link between the injury and the conduct of Defendants.  See Rizzo, 423 U.S.
6    at 371-72, 377.   Plaintiffs have failed to link an injury to Arpaio.   There is simply no
7    evidence demonstrating that Arpaio personally participated in the alleged violation, that he
8    was aware of the violation, or that his policies caused a violation.  See Ortez, 88 F.3d at 809;
9    Taylor, 880 F.2d at 1045; see also Monell, 436 U.S. at 691-92.  And, Arpaio's position as the
10   supervisor of persons who allegedly violated Mr. McClurg's constitutional rights does not
11   impose liability on him.   See Monell, 436 U.S. at 691-92; Taylor, 880 F.2d at 1045.

12        Likewise, Plaintiffs introduce no evidence of a policy, practice, or custom that gave
13   rise to any alleged constitutional violation.  Plaintiffs' response consists of nothing more than
14   sweeping conclusory statements unsupported by factual material stating that Mr. McClurg
15   received deficient medical care pursuant to a policy, practice, or custom of Maricopa County
16   or Arpaio.  As such, Plaintiffs' response is insufficient to defeat summary judgment.  See
17   Taylor, 880 F.2d at 1045.

18        Indeed, Plaintiff has not presented any deposition testimony or other discovery
19   materials related to a policy or custom governing medical care at the jail.  Although Plaintiffs
20   attempt to recount the deficiencies in Mr. McClurg's care, Plaintiffs simply fail to
21   demonstrate that Defendants were acting pursuant to an "in-house" policy that Defendants
22   made a "deliberate choice" to enforce.  See Canton, 489 U.S. at 389-90.  Further, Plaintiffs'
23   allegation that there was a lack of training is too general to establish that the alleged deficient
24   medical care was caused by Maricopa County or Arpaio's failure to properly train employees
25   or that the training was actually inadequate, or even that Mr. McClurg's care over the course
26   of a four-month period (which included extended periods of care at Maricopa Medical
27   Center) was representative of an established policy or custom at the jail.  See Celotex Corp.,

28

1   477 U.S. at 324 (party opposing summary judgment "must go beyond the pleadings and ...

2   designate specific facts" showing a material factual dispute).

3          As for Plaintiffs' reliance on the findings by the federal court in Graves v. Arpaio,

4   those findings are simply not relevant to this discussion.  Moreover, standing alone, remedial

5   orders, such as that entered in Graves, cannot serve as a substantial basis for a § 1983 claim

6   for damages because such orders do not create "rights, privileges, or immunities secured by

7   the Constitution and laws."  Green v. McKaskle, 788 F.2d 1116, 1123-24.  Rather, remedial

8   orders are the means by which unconstitutional conditions are corrected.  See id. at 1123.

9   And, to the extent the Graves order notified Defendants of deficiencies in medical care at the

10  jail, that order was not issued until October of 2008 – eight months after Mr. McClurg was

11  released from custody.

12         As a result, there is nothing in the record to demonstrate that Mr. McClurg's alleged

13  inadequate medical care stemmed from a policy or custom promulgated by Defendants as

14  opposed to negligence or malpractice, which does not support a constitutional claim.  See

15  Broughton, 622 F.2d at 460 (neither negligence nor medical malpractice establishes a

16  sufficiently culpable state of mind required to show deliberate indifference).

17         Defendants are also entitled to summary judgment with respect to Plaintiffs' claim for

18  loss of familial association.   While it is clearly established that a child possess a

19  constitutionally protected liberty interest in the companionship and society of his or her

20  parent, Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 371 (9th Cir. 1998), the

21  right to familial association can only be violated if there is an underlying due process

22  violation.  See, e.g., Lee v. City of Los Angeles., 250 F.3d 668, 685 (9th Cir. 2001) ("[T]he

23  state's interference with [the right of familial association] without due process of law is

24  remediable under 42 U.S.C. § 1983.") (quoting Kelson v. City of Springfield, 767 F.2d 651,

25  654-55 (9th Cir. 1985) (internal quotation marks omitted).   Plaintiffs are unable to

26  demonstrate that Defendants' violated Mr. McClurg's constitutional rights and, as such,

27  summary judgment is appropriate on Plaintiffs' claim for loss of familial association.

28

1    Lastly, Defendants assert that Plaintiffs are neither entitled to punitive damages nor

2    damages for pre-death pain and suffering for the alleged violations of § 1983.  The Court

3    need not address these issues because there can be no damages under § 1983 where there is

4    no underlying constitutional violation.

5    Therefore,

6    **IT IS ORDERED** that Defendant Maricopa County's Motion for Summary Judgment

7    (Doc. 145) and Defendant Sheriff Joseph Arpaio's Motion for Summary Judgment (Doc.

8    147) are **GRANTED**;

9    **IT IS FURTHER ORDERED** that Plaintiffs' Request for Rule 56(d) Relief (Doc.

10   155) is **DENIED**;

11   **IT IS FURTHER ORDERED** that the Clerk of Court must terminate this action and

12   enter judgment accordingly.

13   DATED this 27th day of August, 2012.

14

15

16                    Michelle H. Burns
                      United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28